CRAWLEY *vs.* THE GEORGIA RAILROAD AND BANKING CO.

1. The presumption that the railroad company was negligent, the property of plaintiff having been damaged by the running of its trains, was satisfactorily met by the company in this case; it being shown that it exercised all reasonable care and caution to prevent the damage. The verdict against the company was, therefore, contrary to the evidence, and a new trial was properly granted.

2. The law requires only that the engineer should blow his whistle at the blow-post and so check his train that he may be able to stop it at the crossing. It does not seem to be necessary for the regular speed to be checked before reaching the blow-post; but the testimony in this case is positive that the speed of this train could have been, and was, checked sufficiently to have stopped it at the crossing if the animals killed had been upon it instead of a number of yards above it.

November 30, 1888.

Railroads. Negligence. Presumptions. Verdict. New trial. Before Judge RONEY. McDuffie superior court. September term, 1887.

Reported in the decision.

THOMAS E. WATSON, for plaintiff.

J. B. CUMMING, J. C. C. BLACK, and BRYAN CUMMING, for defendant.

SIMMONS, Justice.

Crawley sued the railroad company for killing two of his mules, by the alleged negligent running of its

engines and cars.   The jury returned a verdict in his favor.   The defendant made a motion for a new trial, upon the grounds that the verdict was contrary to the evidence, strongly and decidedly against the weight of evidence, without evidence to support it, contrary to the charge of the court and contrary to law.   The court granted the motion, and the plaintiff excepted.

1. Under our law, whenever a plaintiff proves that his property has been damaged by the running of the trains of a railroad company, the law presumes that the railroad company was negligent, and the burden of proof is cast upon the company to show that it exercised all reasonable care and caution to prevent the injury to said property.   The court below, in granting a new trial, decided that the company had satisfactorily shown that it did exercise all reasonable care and caution to prevent the killing of these mules.   Under the evidence in this case, we do not think the court erred in so ruling.   The company showed, in substance, that its train was running its usual schedule at the time it arrived at the blow-post, 400 yards from the public crossing.   When it arrived at this blow-post, the whistle was blown, in accordance with the statute.   About the time the whistle was blown at the blow-post, the engineer saw these mules come upon the track at the public crossing, 400 yards distant, and turn up the track in the direction of the train.   Immediately he "blew on brakes," gave the "stock-alarm," sanded the track and reversed the engine.   When the engine collided with the mules, he had reduced the speed from twelve miles an hour to four miles an hour, and had run only 320 yards of the 400 between the blow-post and the crossing, the mules having gone eighty yards towards the engine.   The testimony was positive by the conductor and engineer that the speed of the train had been so checked that they

could have stopped before they reached the crossing. It appears further from the testimony, that these mules had escaped from the lot of the owner, and were being pursued by one of his servants, and to avoid this pursuit, they ran up the track towards the engine. We think that, under this state of facts, the court below was right in setting the verdict aside. It is true that two of the witnesses for the plaintiff in their testimony said that they did not think the speed of the train had been checked when the collision with the mules occurred. But the careful reading of their testimony will show that they were not in as good a position to judge of the speed of the train, as were the officers and servants of the railroad company. One of them was sitting in the depot, and looked at the train as it was approaching, without his attention being particularly called to the necessity of checking the train, or the emergency for so doing. The other testified that when he heard the stock alarm, he ran 150 yards towards the engine, and in his opinion, the speed had not been checked. These were mere opinions, against positive testimony of persons who were on the train, and who had every opportunity of knowing whether it had been checked in its speed or not, and much better means of knowing this fact than the two witnesses above alluded to.

2. It was argued by counsel for the plaintiff in error that, the track at this point being down grade, it was impossible for the train to have stopped within the 400 yards from the blow-post to the crossing, and that it was the duty of the company to have slackened their speed before they arrived at the blow-post, in order to allow them to get full control of their train. In reply to the first of these propositions, it is sufficient to say that the testimony shows that the

train was checked, and could have been stopped by the time it reached the crossing, in accordance with the statute. The statute only requires the engineer to blow his whistle at the blow-post, and to check his train in order that he might be able to stop it at the crossing, so that no one on the crossing could be injured or damaged. In reply to the other proposition, I will say, for myself, that I think that the law has prescribed the exact point where the checking of the train shall commence. It is not necessary for the railroad to check its regular speed before reaching the blow-post. Under the law, it must commence checking there, in so far as it is necessary to do so in order to stop the train before it reaches the crossing. I am not disposed to extend the liability under this statute, as it is well-known that the railroads cannot comply with such a requirement and carry on the commerce of the country. It is sufficient to hold them to the strict letter of the law, without extending its provisions farther than the law prescribes. At any rate, the testimony is positive that the speed of this particular train could have been and was checked sufficiently to have stopped it at the crossing, if the mules had been upon it instead of eighty yards farther up the track from the crossing. We think, therefore, that there was no error in granting the motion for a new trial.

Judgment affirmed.